Morning, Your Honors. Martin Bishop for Objector Weiss & Associates. I don't have any juicy facts or interesting facts, as your prior case did. This is more straightforward issues of law and interpretation of appellate review or what's an appropriate record to review on appeal. I can, in my mind, divide the issues two ways. One is whether or not my client is an appropriate objector. That's been motioned below and denied. It was motioned in this Court and denied without prejudice, and it is part of the briefing. The other, more comprehensive issue is the correctness or the fullness of the reasons stated for approval of a class settlement and the attorney's fees award and maybe some sub-issues thereunder. I believe the issue regarding Weiss & Associates as a proper objector is fairly straightforward. The ---- Why didn't Weiss file a motion to amend rather than a notice of ---- it doesn't seem like it's really a Scribner's error. Why didn't he file a motion to amend? I honestly don't know. I was not counsel to Mr. Weiss at the time. I took the record as I had. I appeared at the joint hearings in front of Judge Ware regarding the preliminary class certification at the time or certification for settlement purposes only, the fairness and the attorney's fees. I was passed that, and I never thought to ask anyone that question because the issue was on the table, and it seemed to me that ---- So you would have done it differently? I honestly don't know. I've never been presented with the question, and I can't give you a fair or reasoned answer. I do know that they had the full and ample opportunity to depose and ask Mr. Weiss questions as to why he did file the objection the way he did, and it seems to me that the bottom line on the propriety of the objection is whether or not the plaintiff's class was in any way prejudiced. They had the ample opportunity. They knew they had his account so that they knew that Mr. Weiss was, as an individual, was an improper objector, but as a business, as Weiss and associates, he was the proper objector. I cannot see any prejudice to them. They had adequate time to deal with the issue. They addressed it. The trial court implicitly denied it by denying the objections. I don't know what else to add other than that I haven't seen a scintilla of evidence on behalf of the class or Google that they are somehow harmed by Mr. Weiss first filing it as an individual and then correcting it to the Weiss and associates, which was the appropriate class member to bring, and the only appropriate one within his small universe to bring the proper or any objection for that matter. And I'm sorry I don't have the answer to your question, but it never struck me as why he did it in a different way when the court was actually proceeding with it as if it was in a proper forum, and it could have ruled right then and there Mr. Weiss was an improper objector or Weiss and associates had done things improperly and therefore they didn't have standing. That would have raised another group, possibly another group of issues, but it was nothing I was ever presented with. Could you move to the adequacy of the notice that was provided in this case? Certainly there have been cases which have countenanced a notice which describes the aggregate amount of the settlement and describes the plan for allocation, and we've held that's sufficient. You seem to be arguing that more is required, that there must be an articulation in the notice of the amount that each putative plaintiff, member of the class, will receive under the settlement. Is that what you're saying? I'm saying in this particular instance, there were three objectors, and I don't know the amount of overcharges with regard to the two that Mr. Miller represented at the hearing in the district court. I do know that Mr. Weiss's or Weiss and associates' overcharges were $135,000. So it's not your typical, typical class action notice that you're going to get, that you and I and everybody gets two or three times a year. But until you know the number of class members, those that have opted out, how are you going to be able to make that? It's going to depend upon, you know, you've got $25 million, and it's going to have to be a portion. And that's what How can that calculation be made? I'm not asking – I don't think he was asking for a precise amount. I think he was asking for a potential range, which is why I was talking about that at the Fairness hearing itself, which was you're dealing with $135,000 in overcharges. So if you're dealing – are you dealing with getting 1 percent, 5 percent, 20 percent? You know, even a range, 5 to 20 percent, no one still knows. You know, if I indulge in that as a judge sending out a notice, am I really biting off more than I can chew and inviting – oh, my God, that's wrong. More people opted out than I thought, or there's some miscalculation. And what kind of litigation or objections am I going to engender in that? Well, and just in this – all I can do is speak to this particular case on this because I didn't draft the actual objection. But in this case, you've got the class negotiating with Google. Google knows exactly how much money and how many class members there are and how many still do business with them and how many potential coupon settlement – class members are going to get coupon settlements. They had all that information. They've never denied they've had that information. So when – even when the subject comes up in a court of law, they just say, we don't have to do it. So you can make a call and the judge – you can use the telephone. But Judge Ware particularly said he didn't think that that was, you know, the right method to go about it. He didn't specify what the right method to go about it was, but he certainly said making your attorney call, whether it's class counsel or Google's counsel, to get more information, if you could – if they would give it to you, is not the – it was not the right step. So if that's not the right step and they don't have to ever put anything more into their notice, then people are making decisions in a vacuum. And I'm not saying it should be required in all cases or as a matter of law. I'm saying in this particular case, when you've got people with very large sums of overcharges that are – that are admitted, whether or not to opt out or fight the – fight the company individually, I think it's a more – a very much more legitimate question than in the abstract of requiring it on an every case or in every proposed settlement basis. Can you draw a line or tell me a line of reasoning that we can offer to explain why this case should be different from the preceding cases where we have not struck down the settlements on that ground? Well, I mean, it's all well and good to say, you know, this case is different, but we need some explanation to why it's different. Primarily the amount of the – primarily the fact that the settling company has all this information and can probably press, you know, a few – a few or or or. And that wasn't true in any of the prior cases? I don't know. Well, that doesn't help me. Okay. I need a distinction, and you're telling me you don't know whether that's a distinction or not. You have a distinction which is – which is, I believe, unique to not – not just this case, but few cases where the amount of certain overcharges are extremely large in the six figures. I don't know how many – because of the lack of information provided by the settling company and by the plaintiff's class counsel, there is – I have no number of potential class members who have such large overcharges. But I said since they are uncontested and when that – and when you go before – into a court with an objection saying, I don't know whether to accept or deny because I have a six-figure uncontested overcharge, and I don't know … How about your client? Excuse me? Do we know from your client that there's somebody with a six-figure overcharge? What was the overcharge to your client? $135,000. Okay. So I don't know if there's any – I don't know if there are other class members because we – there's been no – there's no information disseminated on that issue. And as I said, Judge Ware agreed that they shouldn't have to take that as a fine. I mean, you say there's no information. Now, after the proceedings have reached this point, there's still – it's not been finalized. There's been no distribution, so you don't … Correct. I – that is one question I did ask of my client last week, and he still has no – he and his other counsel still have no idea as to what he may or may not get. You called it a coupon settlement, and I'm intrigued by that. This – how does this fairly square as a coupon settlement? The person – the plaintiffs elect to receive either cash or they receive an offset, a credit against their ongoing advertising portfolio with Google. It's a – it's a – there's a coupon – it's a potential coupon partial settlement. I'm not saying everybody's getting it, and I don't think that was ever said below. It's just that the credit is in effect a coupon. But isn't a – isn't a credit situation, a credit offer different when you have an ongoing relationship as opposed to a situation in which you're obligated to buy new products? Potentially. I don't know – I don't know how the other class members that have coupon … Well, the word coupon's not contained anywhere. The one that have – the ones that have credit available, I don't know how they – those people would react. They may … No, no, but I think – I think I'm getting to the point, and perhaps Judge Proh is as well, is that in a – in a coupon settlement, then people are distributed coupons. They have to purchase new products and apply the coupon with it. Here, you have an ongoing relationship to which credit may be applied. Why isn't that different from a coupon settlement? Because the – as I said, they may – I don't – I can't speak for other class members. No, I'm talking about generally. Well, because people may feel compelled to continue using their credit in a coupon-like manner and purchasing further – further product from Google. It's – once – it's – it's – it's … But the difference here is you can take – you can take cash or you can – I mean, you – this isn't a classic coupon-only settlement. You have to concede that. No, it's not. And I … So what's the problem? That's – that's only – that's only a portion of the problem. My general problem … No, no. You – but you've argued that – that coupon settlements are disfavored. This is a coupon settlement or functional equivalent, therefore, we should reject it. I'm – I'm just trying to explore that narrow aspect of your argument. It's viewed … Why is it a coupon settlement if – if you can get cash and also if you can apply credit against ongoing services? If people construe it – if – if customers construe it who have credit that they are – and that they have – that they are required or whatever, even – even if they misunderstand it, they're still – they're still not getting cash. But they can. I'm just saying that they're not. But – but you're telling me what somebody that you don't know might somehow think. That's not much of a basis to object upon, is it? But – but that's only – that is only one element of – or one aspect. So what – if that – if that aspect isn't one you want to talk about, what do you want to talk about? Well, what I want to talk about is – is Judge Ware and his failure to state any reasons for either of the major orders that he made, one regarding the settlement and the fairness and one regarding the fees. Why doesn't your client opt out, then? He – he certainly has that option, right? He doesn't have the – I don't know – to be honest, I don't know if he still has the ability to opt out at this point, and number two, he wanted more information as to whether or not he should opt out, and that was the whole point of his making the objection in the first place. And two years down the road, two years plus, he still doesn't have – or almost two and a half – he still doesn't have that information. And all – and what I wanted to say about the – the judge's rulings is that we both are – appellant submitted a letter brief regarding the Bluetooth case and its applicability, and I think that there's just a matter of a – I can't – Well, Bluetooth sets out three – three factors, whether there's a disproportionate attorney's fee award, and here it's 25 percent. Also, whether there's a reversion of funds, in this case, to Google, which there's not. Well, what I'm – well, what I'm – what I'm coming back to is that in making these awards, Judge Ware said nothing. He picked one line of standard rote terms, and he put it in there. There is no – and there is no expression of why the factors are at – to approve the settlement is applicable. Yeah, but, Mr. Bishop, you have to place that in – I grant you that, but do you have to place that statement familiarity with the record in context of the record of the dismissal proceedings, the summary judgment proceedings where issues have been narrowed? And this was a settlement that was achieved, and Bluetooth certainly wants the Court to look at whether it's collusive in a pejorative sense, it's collusive, but – Well, I just wanted to make this point, and I apologize for interrupting. It's an interpretation of Bluetooth. What the plaintiffs would have you believe is that the law and the pronouncements that this Court set forth in Bluetooth were applicable to just that case. And the way I read the case and the – it is – this is how it is done. This is the law. This applies to each and every case. And the only – the only expression in the entire record that I could find with regard to whether or not any of the factors had been considered, precertification and all – and clear sailing provision, was that I have lived through the case, and this is quoting the judge, and as a result of the Court's ruling, severely narrowed the case to where it's reached settlement. But narrowing the case to lesser issues doesn't mean that a settlement is fair or that all these factors come into play. It just means that the – But did the judge where, obviously? He considered it. He said so. That's the one – that is the one thing he said. But I don't believe that that constitutes an expression of the various factors that he has to consider and set forth in a record, so that a proper review can take place. I said the two orders contain one line each of the standard applicable wording and that is not an expression across the record from which this Court can determine whether or not either the settlement agreement or the Board of Fees is appropriate. It just simply is not, unless you want to – unless you're saying that this is what the judge meant, and therefore, by inference, he has considered all these. Now, in the cases I have – I have looked at, and the one, I believe it was Schaefer cited by the plaintiffs in their reply brief, none of them permit orders in this manner to go forward, except for that Schaefer case, where it was, you know, there was a lot more, the reasoning and what had gone on was expressed on the record, and then the judge incorporates that into his ultimate ruling. That didn't happen in this case. The judge also had an obligation in this case, trial judge, to respond to the objections that were made. He didn't do that either. So what his reasonings are is generally unknown. And let me take my last minute and a half for rebuttal. Roberts, Thank you, counsel. If it pleases the Court, Mark Seltzer on behalf of the Plaintiffs' Appellees. First of all, let me just say one thing. This settlement – Before you start, do you have a time agreement? I'm sorry? Are you splitting your time? No. I'm taking the time. Okay. Great. Thank you, Your Honor. The settlement that's under attack right now by this objector is a remarkably successful result for the class. It provides $20 million in monetary benefits for the class, plus interest earned on the settlement fund, plus Google's payment of all of the costs and expenses of class notice and claims administration. It was achieved only after years of intense litigation and represents a very substantial percentage of the maximum potential recovery that the class could have obtained if we had succeeded at trial. What was the maximum? We estimated that the maximum theoretical recovery was about $200 million, and that was based upon an analysis that we made that was submitted to the district court and was before the court when the court approved the settlement. So the court was able to assess the recovery against the maximum theoretical amount. We also pointed out to the court that that estimate was probably very high because it made certain assumptions that would be essentially the worst possible case for the plaintiffs, and it's likely that that was not the case in reality. The settlement is also remarkable because it doesn't require proofs of claim to be filed. Instead, the proceeds of the settlement are going to be distributed in cash or in credits. Cash will be distributed by the claims administrator, credits by Google, to pay outstanding amounts that are already due and owing to Google by the class members, with one exception. If a class member owes less to Google than would be payable to him as his distribution amount, that class member gets an election to take cash or credit. So in every instance, the class members are going to receive the full benefit, monetary benefit of this settlement. It is by no way, shape, or form properly considered a coupon settlement, and no authority has been decided to establish that. In fact, coupon settlements, as the court knows, were the subject of CAFA, and the offer to buy a new product or a new service, and you don't know what the actual usage of the coupons are going to be until after the redemption expiration date has come and gone. That's not this case. All of the proceeds are going out to the client. Scalia. Mr. Seltzer, does any of that explanation you've just provided, and I'm not talking about the coupon settlement. I think you're correct on that. But the other information that you just provided in response to Judge Clifton, does that appear in the record at the fairness hearing or in the final judgment? It appears in the fairness hearing. It was actually the subject of a declaration submitted by my partner, Rachel Black, who outlined how the maximum amount was computed. It was in our brief submitted in support of the settlement, all of which were served on the objectors three weeks before the hearing and filed with the court. It was also discussed by Mr. Sussman, my partner, at the fairness hearing. We talked about the estimate and how it was arrived at, and he discussed the genesis of the settlement discussions, the back and forth that took place between Google and the plaintiffs about settlement and how the amount was arrived at. There were two components to that estimate. One component had to do with the so-called pausing days. We had an estimate from Google of about $5 million of overcharges. That amount was on a worldwide basis. It's obviously overstated with respect to U.S. users of AdWords. The other amount had to do with the so-called 120 percent overcharge amount. We estimated that the maximum theoretical liability would have been $197 million. So that's how I get to the $200 million figure. And how that was computed was laid out in the papers submitted to the court. And as I said, that's a very, very high estimate of the damages. We think that the $20 million is actually a much more substantial fraction of what could have potentially been recovered had the case not been settled. So this is not a coupon settlement. That point, by the way, was never made below. In our papers submitted to the court, we said it was not a coupon settlement. That point was made by Mr. Sussman at the hearing, the final fairness hearing, and the objectors never, ever contested that point. They never said anything about that. They never said anything about that in a written objection that they submitted prior to the settlement hearing. It was raised for the first time on appeal. The point's been waived. If it had any merit, it's been waived, but it has no merit. Scalia. Speaking of waiver, what about this challenge to Wiese's ability to the propriety or viability of his objection? The notice of Scrivener's error probably should have been a motion to amend, but how did that happen? Well, you had the respondents had the opportunity to respond both in writing and at the hearing to the objection. How were you really prejudiced by that? We're really prejudiced in this way. You have somebody who is, claims to be a class member, who files an objection late, after the time period for filing objections has passed. We're prejudiced. The class is prejudiced because now it's two years later and the settlement still isn't final. The proceeds have not been distributed to any class members. So here you have somebody with no right, legal right, to stop the show, has done so by filing this appeal and pursuing this appeal for reasons which are, to me, incomprehensible because the arguments that were made below and made in the appellate briefs are so plainly without merit that this is simply dragging on a process unnecessarily. But what does that have to do with the identity of the objector? I'm sorry, Your Honor? The identity of the objector, his problem is that he filed in personal rather than business form. But in business form, he would apparently have standing to object. So what's the problem, what's the harm that resulted from him filing in personal rather than business form? Well, the problem is one of observing what the order of the court said. And what happened is that Mr. Weiss filed an objection by a lawyer, and by the way, represented by six lawyers in this case. He's a lawyer represented by six lawyers, files an objection claiming to be a class member, asserting that he's an AdWords advertiser and giving the AdWords account. He was no such thing. He never was a class member. The statement in the objection was false. Now, that's the problem.  And the question we've posed is what's the prejudice that resulted from that? And you describe prejudice resulting from the objection, but it didn't really result from the mischaracterization of himself. All the harms that you outlined, the delay, would have resulted if he'd made the objection in his corporate, his business form. So, and nobody really had a misunderstanding as to who he was. I'm not sure how the filing in the wrong name should be such a big problem. Well, it is a problem in this respect. If you're going to allow class members who want to file late and tag on to somebody who was not a class member who filed an objection, that creates all kinds of problems in finality and case management of class action cases. There is a reason why these rules exist in these cases, to have sharp deadlines to occur so that the process of completing the settlement doesn't drag on forever under a condition of uncertainty. And he never made a motion to amend. Instead, he filed something called a notice of scrivener's error. This is no scrivener's error. That's a mischaracterization. A scrivener's error is not this kind of substitution of a new party for somebody else. And his law firm, his professional corporation, is not the same thing as him. It's a different entity. And the fact is, is that he's been pursuing this appeal in late, and it has prejudiced the class because we've now had to wait all this time. Let me turn to a couple of the questions the Court asked, and I'll just depart from the outline I prepared. With respect to the issue of there really were two issues raised below. One issue had to do with whether or not they had to specify in the class notice the individual recovery amounts of a class member. Could you have done that? No, we could not have done that. And should you be required to do it? Not only could we not do it for a simple reason that the number of opt-outs weren't known, and there are very large, you know, class members in this class, and if they were to opt out, that could very much affect what the total amount of claims remaining in the class would be. We shouldn't be required to do it because what it would require is engaging in conjecture. That's exactly what this Court said in the Teresi v. Tucson electric power case. Why is it conjecture to give a range of potential results? You can say, all right, if they're 10% opt-out, the fund will be reduced to X. We think a range of recovery from, you know, Y to Z may be occurring. Because as a lawyer, if you're advising your client, should I object or not, the client is going to say, how much am I going to get, or what's my range? And you say, I don't know. I have no idea. The fact is, first of all, we followed the guidance of this Court in the Teresi case, in Holliday and Badger. If you trust us, you'll trust anybody, I guess. You know, and this has been the accepted practice for many, many years. I understand that. I'm just talking, let's get down to this case, because there's really no information in the notice. I mean, I accept your representation that globally it was a very good deal. But when I say, if I'm representing a client, and they say, what does this mean for me? And I have to say, as a lawyer, I have no idea. That's kind of a tough statement to make. And they say, well, should I object or not? And I say, I don't know. I don't know how much it means to you. Well, Your Honor, to do that, though, you would have to lay out a whole series of assumptions about what the possibilities were, using a range of variables. What's wrong with that? Because it could be misleading, and it could also require the notice to depart from a neutral objective statement that's required on a class notice. It's just like talking about what the estimate of damages would be in a notice. You've got various contingencies and uncertainties, and laying that out. Then you have to say, well, what are the defendant's contentions about damages? But if you were able to say, we think that our maximum recovery was X, and there were a bunch of variables that might affect that, this makes this a fair settlement, it doesn't seem to be much of a stretch to say, given all of the variables, we anticipate that the range could be from X to Y, or the minimum is X. Well, there are two different things you could be talking about in the notice in that regard, because their argument they made is, we can't decide whether to opt out or not from the class. And their argument was that you've got to know what the distribution amount will be and also what the recovery would be in a case. To require that in a class notice would be to involve a whole series of conjectural estimates to be made about the class. I'll agree with you on that. But my question is somewhat different. My question is, why can't you establish, even under the worst case scenario, here's what the recovery is likely to be for each class member? Or if you have X, here's a multiple. And that doesn't seem to be. Well, but the worst case, for example, if the decision is opting out, is zero recovery. And here's why. Then you'd lay out, you want to inform the class members, here are the arguments the defendant is making about why there's no recovery possible. And Google had many arguments about why we would lose the case, why we should lose the case. So if you really want to advise your client, accept it or not accept it, you've got to know what the risk of litigation is. And to know that, you really have to lay out the contentions of the parties and, on both sides, then have the judge adjudicate whether it's a fair statement of the claims and contentions, and then try to put a probability on it in order to advise a client. So simply knowing that. I can look at the pleadings and say, all right, here's the public pleadings. I can analyze that for a sophisticated client and say, all right, I see that the arguments are made here. We have various motions made and so forth. But I guess what troubles me about this case is that you really can't tell from the notice. It just doesn't convey the information I would think is necessary to make an informed judgment on whether to opt in or out. Well, but that was true, for example, in Teresi. There you had a $30 million lump sum settlement. You had a plan of allocation that says, here's how we're going to divide up the money. You know, here's the distribution plan. And the argument was, well, you've got to know what the individual amount is. And the Ninth Circuit said, no, that's not required. And here's why. And the reason why you don't require it is because it requires engaging in speculation. And it would make the notices much longer than is required of the law. The class members are free to go to the court file. In fact, they're told in the notice the file is available for inspection. So if somebody really wants to ---- This would not have answered the question, I don't think. Well, I'm sorry. I do want to respond to Your Honor's question. Yes. Which is the ---- if you set out a rule that you have to do it case by case and figure out which one you lay out the circumstances of recovery, it would make it a very unworkable process for a trial judge to know what particular content of notice is required or not required as opposed to following the general rule that all you do is you lay out the formula in the plan. And that's been true for many, many, many years in class action cases. This is not ---- this would be a total innovation in the law to require that. The other ---- What should the class member look at? I mean, what should the class member consider? I'm sympathetic to the problem. You get this notice and, okay, is this a good deal for me or not? But there's no way to answer that question. So what would you suggest the class member do? Well, the class member, first of all, if the ---- wishes to inquire further, counsel are available to discuss the case with any class member who wishes to do so. So if someone wants to follow up and really make an inquiry, suppose if somebody had a very, very substantial claim and they wanted to know what they might get in the settlement versus otherwise, they are invited to contact counsel in the case for that purpose. Do they get any calls? Actually, in this case, we did get some calls and we answered every one of them. Except I think in this case you'd have to say, I don't know, because the question is, what is your client likely to get under your settlement? And your answer would be, I don't know. Well, we could tell ---- you'd have to look at the ---- to answer that question, you then need to get into particulars of the individual client's dealings with Google. For example, did they have paused days during the class period? How many days? You'd have to get into the details of that information and try to analyze that and compare that against the ultimate net recovery that may be available. So in that circumstance, it really is not something you could lay out in a notice and say, here's how you would apply it practically speaking. If you apply it to the Google case, for example, what was the ---- what month was the first month when you had 120 percent overcharge? And you have to find out that information from your records. And then take that information, find out whether there are any paused days during the class period. Get that information. And then compare that with what you think the distribution amount will be as a pro rata share of the settlement fund to come up with that answer. It is not an easy process. Now, Weiss has been deposed. And as an objector, do you know now what, on his $130,000 claim, the overcharge is what he stands to garner from it? No, I don't, because that amount is to be determined by Google 10 days after the effective date, which has never happened. So that computation has been made. My guess is that it's probably very largely overstated on his part. There's been no proof of claim by him to establish that amount. The other point I wanted to make regarding the findings, which has been the brunt of the attack on the appeal here, in this case, the Court had lived with the matter for three and a half years, had decided multiple rounds of summary judgments, was fully familiar with the facts of the case, the contentions of the parties, got a full presentation from the lawyers – from the plaintiff's lawyers about the – No, you're absolutely right. But would it be helpful for purposes of review if the judge, in making the findings, more than was recited here and in the final judgment, perhaps, recited more than is recited in the four-page final judgment? I don't know if that was submitted as a proposed form of final judgment by the parties or not. If it was, perhaps consideration be given to greater explication. But is that really sufficient, excepting that certainly Judge Ware thought it was fair and had lived with the case for a good, good long time and had a basis for thinking what he thought unquestionably? Well, not only did he think it was fair and have a basis for understanding it, he had looked at the arguments that were made regarding the Classes case,  the nuances of all of the issues in the case, and those rulings that had the effect of substantially narrowing the plaintiff's case. He attributed those rulings to the ability to settle the case. And he was using that, I think, very clearly in relationship to what the estimates were of the damages or recovery that might be obtained based upon the narrowed claims of the case vis-à-vis the settlement. That's essentially what he said on the record in the transcript of the hearing. It would serve no earthly purpose to remand this case for further findings. This is a fair settlement. It's really a very, very successful settlement in my view. The Court – this Court has said that even where findings are a conclusory, that if there's an adequate basis to support the finding that the settlement is fair, reasonable, and adequate, that there's no value to be asserted in remanding the case for further self-evident rulings. That's the situation. Now, that was said in the Hanlon v. Chrysler Corp case regarding certification of the settlement class, but it applies equally strongly to the finding that the settlement is fair and reasonable under all the circumstances here. I have very little time left. Are there other questions that Your Honors have? Any further questions? Thank you for your argument. Thank you, Your Honor. Rebuttal. Just two or three points, Your Honor, very quickly. With regard to being the appropriate party for objection, Google had and I assume Plaintiff's counsel had Mr. Weiss and Associates' account number. They knew who they were dealing with. They could not be prejudiced. They took his deposition. They found out all this information. With regard to the notice itself, no matter – it seems no matter how much prodding is made, there's never – they refuse to give any sort of answer, any sort of range. And given that they have come up with the conclusion that $20 million is a fair number for settlement, they must know the number of claimants. They must have the other information, the data to put in there. And they could come up with some sort of range. We're not asking for dollar amounts. We never said that it had to be close on the button. Just some sort of an idea of what they were talking about. And lastly, the reason I was talking about the – this Court's recent Bluetooth case is because I understand the facts are quite different in that case than they are from this particular matter. But the Court was quite clear because these is – this is what a court has to do when it is determining the fairness of a settlement, pre-cert, especially in this case  And this record shows none of it except for the one sentence I quoted to the Court from the hearing. That was it. Thank you. Thank you, counsel. The case just heard will be submitted for discussion.
judges: Pro, Thomas, Clifton